UNITED STATES ex rel. Thomas C. COOPER, Relator-Appellant,

v.

Frederick G. REINCKE, Respondent-Appellee.

No. 273, Docket 28480.

United States Court of Appeals Second Circuit.

Argued Jan. 17, 1964.

Decided June 5, 1964.

---

Morgan P. Ames, Stamford, Conn., (Lawrence Hirsch, Cummings & Lockwood, Stamford, Conn., of counsel), for relator-appellant.

Walter P. Staniszewski, State's Atty., for Middlesex County (Peter W. Gillies, Sp. Asst. State's Atty.), for respondent-appellee.

Before LUMBARD, Chief Judge, and SWAN and MOORE, Circuit Judges.

MOORE, Circuit Judge.

This is an appeal from an order of the United States District Court for the District of Connecticut denying, after a hear-

ing, a writ of habeas corpus. 219 F.Supp. 733 (D.Conn.1963). Appellant was convicted in a Connecticut court after a jury trial for the felony of conspiracy to commit larceny. His conviction was affirmed and the Supreme Court denied certiorari. See State v. Devine, 149 Conn. 640, 183 A. 2d 612, cert. denied sub nom. Cooper v. Connecticut, 371 U.S. 930, 83 S.Ct. 303, 9 L.Ed.2d 237 (1962). On this appeal appellant contends that he was denied due process of law because he was not represented by counsel when he pleaded not guilty and waived examination in a hearing in probable cause, that he was incompetently represented by counsel at trial and on appeal, and that the information on which he was convicted did not apprise him of the exact nature of the charge against him.

Appellant was arrested in New York City and voluntarily consented to return to Connecticut where he appeared for what Connecticut calls a hearing in probable cause (or, "bindover hearing")[1] before the Trial Justice Court of the town of Essex. Bond was set at $10,000. The hearing was postponed several times to permit appellant to retain private counsel, but because of lack of funds he was unsuccessful. Appellant then requested the services of the Public Defender, but this request was denied because of no provision therefor in preliminary proceedings, except in capital and treason cases. At the hearing, appellant appeared without counsel, waived examination and pleaded not guilty to both counts of the complaint. He made no admission or confession or in any other way acted so as to prejudice his case. The State did not offer any evidence. The Trial Justice Court found that probable cause existed and bound appellant over to the Superior Court for trial. Thereafter, at appellant's request, the Public Defender for Middlesex County assumed the duties of defense counsel. At trial, each of appellant's co-defendants had separate counsel.

Coming as it does in the wake of Gideon v. Wainwright, 372 U.S. 335, 83 S. Ct. 792, 9 L.Ed.2d 799 (1963), the right to counsel question here presented is of particular significance. Gideon overruled Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942) and thereby abolished the distinction between the right to counsel in capital and non-capital cases in state prosecutions. It has already been established in this court that Gideon requires that absent a properly established waiver that an indigent defendant be represented by counsel at the time he pleads guilty in a state court to a felony charge and that such a requirement operates retrospectively. United States ex rel. Durocher v. LaVallee, 330 F.2d 303 (2d Cir.1964). The situation at bar is, of course, markedly different from that of the Gideon and Durocher cases. Well in advance of trial, counsel was appointed and he represented only the appellant throughout the trial; indeed, there were three lawyers for as many defendants. Nevertheless, apart from any assertion that he was not given a fair trial or that he was in fact prejudiced, appellant contends that his conviction is defective because he was not represented by counsel when he entered his plea of not guilty upon the hearing in probable cause. In support of this proposition, appellant relies on Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961) and White v. Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed. 2d 193 (1963).

Hamilton v. Alabama, supra, involved a state capital conviction where the petitioner had pleaded not guilty at his arraignment. At the time of entering this plea, petitioner was not represented by counsel, although he did have counsel at trial. The Supreme Court reversed his conviction, stating that "whatever may be the function and importance of arraignment in other jurisdictions * * in Alabama it is a critical stage in a criminal proceeding." 368 U.S. at 54, 82 S. Ct. at 158. The Court enumerated sev-

1. See Wright, The Rules of Evidence Applicable to Hearings in Probable Cause, 37 Conn. B.J. 561 (1963).

eral defensive maneuvers which are waived in Alabama if not asserted at the arraignment: the defense of insanity, pleas in abatement and improper grand jury selection. What happens at arraignment in Alabama, therefore, may well affect the whole trial. "When one pleads to a capital charge without benefit of counsel," the Court continued, "we do not stop to determine whether prejudice resulted," citing three guilty-plea cases. "In this case, as in those, the degree of prejudice can never be known." 368 U.S. at 55, 82 S.Ct. at 159. The Court took care to indicate, however, the "differing consequences" that attached to arraignment in the various jurisdictions.

While .White v. Maryland, supra, is factually distinguishable from Hamilton v. Alabama, similar principles governed. Petitioner had entered a guilty plea at a Maryland preliminary hearing when he was not represented by counsel. Later, at his arraignment, when he did have counsel, petitioner entered pleas of not guilty and not guilty by reason of insanity. The guilty plea made at the preliminary hearing was introduced in evidence at trial. Under these circumstances, the Court held that the preliminary hearing was a "critical" stage in the proceedings and there was no need to determine whether prejudice resulted from the absence of counsel. It is clear that what made the preliminary hearing "critical" was that a guilty plea had been entered and that the plea had been used against petitioner at trial. Thus, the Court commented: "[w]hatever may be the *normal* function of the 'preliminary hearing' under Maryland law, it was *in this case* as 'critical' a stage as arraignment under Alabama law." 373 U.S. at 60, 83 S.Ct. at 1051 (Emphasis added.)

From Hamilton v. Alabama and White v. Maryland, it is plain that there is no arbitrary point in time at which the right to counsel attaches in pre-trial proceedings. Even in White, decided after Gideon, the Court did not refer to counsel "at every stage." Rather, the "critical" point is to be determined both from the nature of the proceedings and from that which actually occurs in each case. Our initial concern in the case at bar, therefore, is whether this Connecticut pretrial procedure was of such consequence that it was critical.

Section 54–76a, Conn.Gen.Stats. (1958 Rev.) the statute under which appellant entered his not guilty plea and waived examination provides:

> *"Procedure at hearings in probable cause.* The defendant shall be called upon to plead in a hearing in probable cause. If the defendant waives examination, the judge shall forthwith hold him to answer in the appropriate court. If the defendant does not waive examination, the judge shall hear the evidence within a reasonable time. The defendant may cross-examine witnesses against him and may introduce evidence in his own behalf. If from the evidence it appears to the judge that there is probable cause to believe that an offense has been committed and that the defendant has committed it, the judge shall forthwith hold him to answer in the appropriate court; otherwise the judge shall discharge him. After concluding the proceeding the clerk of the court shall transmit forthwith to the clerk of the appropriate court all papers in the proceeding, any bail taken by him, and a transcript of the proceedings."

The Connecticut hearing in probable cause has been accurately characterized as a mere "'inquest' made to determine the existence of probable cause, and to discharge the accused if none exists." Walters v. Platt, 22 Conn.Supp. 1, 158 A.2d 255, 258 (Sup.Ct.1956). The finding of probable cause is not final and it cannot be used against an accused on the trial before the Superior Court. See State v. Wilson, 22 Conn.Supp. 345, 172 A.2d 902 (App.Div.1961); see also State v. Fox, 83 Conn. 286, 76 A. 302 (1910). The hearing in probable cause and appearance before a judge or committing magistrate can be readily dispensed with by the State since an original informa-

tion may be filed in the Superior Court. In that event no hearing in probable cause is held. Conn.Gen.Stat. §§ 54–46, 54–42; see State v. Hayes, 127 Conn. 543, 18 A.2d 895 (1941). And, no such hearing is provided where the State's Attorney chooses in the first instance to obtain a bench warrant from the Superior Court. Conn.Gen.Stat. § 54–43; see State v. Annunziato, 145 Conn. 124, 139 A.2d 612 (1958). See generally Wright, The Rules of Evidence Applicable to Hearings in Probable Cause, 37 Conn.B. J. 561 (1963).

█ The Connecticut hearing in probable cause cannot, therefore, be characterized as critical as is arraignment in Alabama. Indeed, it can hardly be termed a proceeding against the accused; to the contrary, it appears to operate entirely for the accused's benefit. And the mere fact that an accused is required to plead does not in itself demand a contrary conclusion where the plea entered is a self-serving denial of guilt. At trial, appellant had every opportunity to present any defense that was available initially. Under these facts failure to supply counsel at this stage in the proceedings cannot be said to be a deprivation of a constitutional right. See In the Matter of DeToro, 222 F.Supp. 621 (D. Md.1963) (preliminary hearing not critical); United States ex rel. Spinney v. Fay, 221 F.Supp. 419 (S.D.N.Y.), aff'd, 325 F.2d 436 (2d Cir.1963) and cases there cited; United States ex rel. Hussey v. Fay, 220 F.Supp. 562 (S.D.N.Y.1963).

Our conclusion that absence of counsel at a Connecticut hearing in probable cause does not require reversal where a not guilty plea has been entered is bolstered by cases arising prior to Gideon, Hamilton and White, but uninfected with the Betts v. Brady element of unconstitutionality. While not specifically recognizing a critical stage at which time the right to counsel attaches, these cases are instructive as to the scope of the right to counsel where it has been traditionally guaranteed, in federal prosecutions and state capital cases.

In Council v. Clemmer, 85 U.S.App. D.C. 74, 177 F.2d 22, cert. denied, 338 U. S. 880, 70 S.Ct. 150, 94 L.Ed. 540 (1949), a federal prosecution, petitioner alleged a denial of right to counsel in violation of the Sixth Amendment at preliminary hearing and at arraignment. On both occasions, petitioner pleaded not guilty. In addition to holding that there was no constitutional right to counsel at preliminary hearing, the court commented on right to counsel at arraignment:

"There is no constitutional requirement that the accused be represented by counsel on arraignment when he pleads not guilty. There is no abridgement of fundamental rights under these circumstances. * * * Even where the accused pleads guilty on arraignment, the failure to appoint counsel is not prejudicial where counsel is appointed immediately thereafter and full opportunity is given to withdraw the plea * * *. 177 F.2d at 23.

More recently, in Headen v. United States, 317 F.2d 145 (D.C.Cir.1963), petitioner had been denied appointed counsel when he appeared before the United States Commissioner and waived preliminary hearing. "[E]ven if without counsel he had actually admitted his guilt before the Commissioner," the court said in affirming, "he would have been permitted to withdraw the plea, and it could not have been used against him." 317 F.2d at 146. To the same effect, see State of Utah v. Sullivan, 227 F.2d 511 (10th Cir.1955) (not guilty plea, preliminary hearing, state capital conviction); Rubin v. Welch, 159 F.2d 493 (4th Cir. 1947) (not guilty plea at federal arraignment).

The position adopted by the Federal Rules of Criminal Procedure is of some moment, since Connecticut's hearing in probable cause, except for the pleading requirement, appears to be patterned directly after Federal Rule 5(c), "Preliminary Examination." The Advisory Committee on the Federal Rules carefully indicated that Rule 44, "a restatement of existing law" (1946) of the fed-

eral right to counsel "at every stage of the proceeding" did not include the right to appointed counsel at preliminary proceedings before a committing magistrate.

 In addition to insisting that his very plea, while unrepresented, is enough to void his conviction, appellant argues that he was in fact prejudiced. We agree with the District Court that there is no merit in this claim. The test is whether lack of counsel worked to "infect his subsequent trial with an absence of 'that fundamental fairness essential to the very concept of justice.' Lisenba v. People of State of California, 1941, 314 U.S. 219, 236 [62 S.Ct. 280, 290, 86 L.Ed. 166]." Crooker v. California, 357 U.S. 433, 439, 78 S.Ct. 1287, 1292, 2 L.Ed.2d 1448 (1958); see United States v. Aviles, 274 F.2d 179, 193 (2d Cir.1960), cert. denied sub nom. Genovese v. United States, 362 U.S. 974, 80 S.Ct. 1059, 4 L.Ed.2d 1010 (1960); Odell v. Burke, 281 F.2d 782, 786 (7th Cir. 1960,) cert. denied, 364 U.S. 875, 81 S. Ct. 119, 5 L.Ed.2d 96 (1960). Appellant has made no showing that lack of counsel at the hearing resulted in an absence of fairness at trial. To the contrary, the record discloses that at the habeas corpus hearing, appellant's trial counsel was asked, "Were you prejudiced or handicapped, or was your trial of the case representing Cooper made more difficult by the fact that he (Cooper) had not had counsel before the Justice Court and had waived examination?" Counsel replied, "I did not feel that he had been prejudiced in any way whatsoever." Appellant does not complain of interrogation by police or the State's Attorney; that statements were sought or obtained; or that evidence was obtained from him which was used against him on his trial or otherwise. In short, this case presents none of the elements which have been considered violations of constitutional rights.

 Evidently unable to produce evidence of actual prejudice at trial resulting from lack of counsel at the hearing in probable cause, appellant advances several possibilities of prejudice. Much is made of a claimed right to have one's counsel bargain with the prosecutor for the opportunity of pleading guilty, perhaps to a lesser charge, since it is common knowledge that sentences are shorter where the defendant saves the taxpayers the expense of trial. While everything appellant says may be quite true, it is equally true that had he chosen to change his plea to guilty after weighing the chances with his counsel, he was perfectly free to do so. He neither waived nor lost any of these bargaining possibilities. Appellant also points out that he waived his opportunity to require the State to show probable cause and to examine any witnesses offered. This is to suggest perhaps that appellant would have had a running start in his trial preparation because a lawyer *might* have chosen not to waive the hearing and thereby *might* have been better prepared at trial. This reasoning, however, overlooks the fact that the right reserved to appellant at the hearing was merely not to be held in custody without probable cause. Consequently, the possible denial of that right is the only thing of which he can now complain. Whatever collateral benefit that might have accrued, just as the prejudice he may have suffered, is altogether conjectural and certainly cannot amount to the deprivation of a constitutional right. Appellant has the burden of showing his trial to have been fundamentally unfair, a burden that is not met by speculations as to what could have happened had any number of events occurred differently.

Appellant also asserts that his trial counsel, the then Public Defender of Middlesex County, was in such emotional condition during trial that it was impossible for him competently to handle the defense. The basis of this ground for reversal appellant finds in the Public Defender's subsequent conviction of wilful failure to file income tax returns. In the course of that tax prosecution, a psychiatrist testified to the effect that the Public Defender was not able fully to comprehend and grasp his full surroundings because of emotional distress at and

about the time of his tax derelictions. It was the doctor's opinion that the condition he found to exist on or about April 15, 1958, had continued to the period of petitioner's trial in the fall of 1959, but he could not say that this condition affected his trial competence.[2] In support of his argument, appellant advances specific instances of ineptness said to exemplify counsel's mental instability. After hearing testimony of the examining psychiatrist and the testimony of trial counsel himself, the District Court found that appellant's representation had been competent. 219 F.Supp. at 739.[3]

■■ In the mind of the dissatisfied defendant, the line between unsuccessful defense counsel and incompetent defense counsel is readily confused. Since few trial lawyers would be expected in retrospect to agree on the correct resolution of each of the many decisions that must be made at trial, the defendant's dissatisfaction is enchanced on appeal when other lawyers scrutinize the record for instances of error. Indeed, the more refined and imaginative defense strategy is often the most vulnerable to criticism from fellow lawyers, not to mention the disgruntled defendant. These considerations, among others, stand behind the well settled rule that a conviction will not be set aside on the ground of incompetence of counsel unless the representation has been such "as to make the trial a farce and a mockery of justice." United States v. Wright, 176 F.2d 376, 379 (2d Cir.1949), cert. denied, 338 U.S. 950, 70 S.Ct. 478, 94 L.Ed. 586 (1950). It is apparent that the errors pointed to were not such as would sustain the claim that appellant has been denied a fair trial. See United States v. Garguilo, 324 F.2d 795 (2d Cir.1963).

■ Neither of appellant's other grounds for reversal have merit. As the District Court correctly observed, persistent denial of legal representation in prosecuting a criminal appeal constitutes reversible error. Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). Here, however, the State Supreme Court of Errors directed that counsel be appointed. Although the delay that attended appellant's appeal is not to be condoned, it does not warrant overturning his conviction. Finally, as the District Court found, the information filed against appellant adequately apprised him of the charge, see also State v. Devine, supra, 149 Conn. at 648, 183 A.2d at 616, and was sufficient to protect him from double jeopardy of a charge of conspiracy.

The Court wishes to express its appreciation to Morgan P. Ames, Esq., who has ably represented appellant on this appeal as assigned counsel.

Judgment affirmed.

2. The psychiatrist testified at the hearing below:
"Q. Referring to the answer in Exhibit 19, you said, 'At times he was not able to fully comprehend and grasp his full surroundings, because he was emotionally distressed.' Is that correct?
"A. Yes, that's correct.
"Q. Based upon your knowledge of psychiatry, and your appearance, or observation of courts of law, is a person who is extremely unstable able to try a case competently?
"A. I don't feel I could answer this. In my basis for this statement, where I saw evidence of instability, is when we were attempting to work with [him] and his wife and family, in an effort to make realistic plans in a realistic program for the treatment of his mother-in-law and sister-in-law, this * * * instability, indecision, vacillation, it occurred. But, I am not sure—I could not translate this into the practice of law, as to his degree of competency."
* * * * *
"Q. Doctor, are you in a position to state whether or not this condition that [him] had affects the competency of a trial lawyer in general?
"A. I am not in a position, no."

3. Courts in the light of their experience should be able to take judicial notice that many highly skilled professional men have carried on their activities with the greatest competence during years in which by subsequent jury verdicts they have been found to have been less than frank in their income tax disclosures.